UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**AMERICAN DAIRY QUEEN CORPORATION,**

*Plaintiff*,

v.                                                               Case No. 5:24-CV-01209-JKP

**UAM, LLC,**

*Defendant*.

### ORDER GRANTING TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff American Dairy Queen Corporation's ("ADQ") Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). *ECF No. 3*. The Court, having fully considered the Complaint, the Motion submitted therewith, and all matters of record herein, finds ADQ's Motion should be and is hereby **GRANTED-IN-PART** and **DEFERRED-IN-PART**.

In the Motion, ADQ requests the Court immediately restrain its former franchisee, Defendant UAM, LLC ("UAM"), from continuing to operate its restaurant located at 200 Ross Sterling, Anahuac, Texas 77514 (the "Restaurant") as a Dairy Queen® and/or DQ® store or using ADQ's marks, including the DAIRY QUEEN®, DQ®, or BLIZZARD® trademarks (the "DQ® Marks"), without ADQ's authorization. *See ECF Nos. 3, 3-13*.

The party moving for a temporary restraining order ("TRO") must establish:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [TRO] will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). A TRO is an extraordinary remedy and should only be granted if a petitioner has clearly carried the burden of persuasion on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

If a petitioner requests the court issue a TRO *ex parte*—that is, without prior notice to the respondent—the petitioner must satisfy two further requirements. First, the petitioner must set forth "specific facts in . . . a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, "the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

As an initial matter, ADQ provided UAM notice in accordance with Federal Rule of Civil Procedure 65(b)(1). In the Motion, ADQ's counsel certifies it contacted UAM by telephone and email on October 22, 2024, to provide notice of ADQ's intention to seek temporary and preliminary injunctive relief. *ECF No. 3 at 3; See also ECF No. 3-11*. ADQ also provided UAM notice in accordance with Federal Rule of Civil Procedure 65(b)(2). The specific facts contained in the Verified Complaint and the reasoning ADQ's counsel provided in the Certification and the Motion allow for the issuance of a TRO *ex parte*. *See ECF Nos. 1, 3*.

ADQ asserts it has properly terminated UAM's franchise and UAM is violating trademark laws by adopting and continuing to use in commerce the DQ® Marks. *ECF No. 1 at 18*. The court need only consider whether one of ADQ's causes of action—for trademark infringement brought under the Lanham Act, 15 U.S.C. § 1114—has a substantial likelihood of success. *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009). Under the Lanham Act, infringement exists if a person uses:

> (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.2008). ADQ submitted evidence it owns the DQ® Marks. *ECF No. 1 ¶ 81*. Notwithstanding ADQ's October 16, 2024,

Notice of Termination, UAM is continuing to operate the Restaurant as a Dairy Queen® and/or DQ® store and use the DQ® Marks without a license. *See ECF Nos. 1-7, 3-1 at 5*. Therefore, the Court concludes at this juncture ADQ has shown a substantial likelihood of success on the merits.

The Court further finds and concludes ADQ has established a substantial threat of irreparable injury. A franchisee's continued use of marks after termination establishes irreparable harm given the lost control over the franchisor's valuable trademarks and the quality of the restaurants operating under its name. *TGI Friday's Inc.*, 652 F. Supp. 2d at 771. ADQ attaches to its Motion Declarations from Heather Peters, ADQ's Director of Food Safety, Quality, and Regulatory for the Treat Division, and Dotty Parrish, ADQ's Business Consultant. *ECF Nos. 3-1, 3-12*. The Declarations demonstrate through UAM's continued passing off of the Restaurant as a Dairy Queen® and/or DQ® store ADQ has lost control over is valuable trademarks and the quality of the restaurants operating under its name. Such injury is irreparable, as it cannot be remedied through monetary damages.

The Court next finds and concludes the threatened harm to ADQ outweighs the threatened harm to UAM. The harm suffered by the closing of the Restaurant is calculable and compensable through monetary damages. *TGI Friday's Inc.*, 652 F. Supp. 2d at 772. If a TRO is not issued, ADQ loses control over its trademarks and faces a substantial threat to its reputation and the goodwill it has built in its brand. Accordingly, although UAM will incur harm by the issuance of a TRO, the harm to UAM is not irreparable and is outweighed by the threatened harm to ADQ.

Finally, the Court finds granting a TRO will not disserve the public interest. The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing trademarks. *Quantum Fitness Corp. v. Quantum*

*LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999). The public has an interest in not being deceived into believing it is dining at a Dairy Queen® and/or DQ® store that is no longer affiliated with ADQ and is using the DQ® Marks without authorization.

Moreover, ADQ's Zero Tolerance Policy prohibits the use and storage of "rerun" for food safety and product quality reasons, including potential contamination with salmonella or listeria. *ECF No. 3-12 at 3*. Therefore, the Court concludes it is in the public interest to preserve the *status quo* and give the parties ample opportunity to develop the record without subjecting the public to UAM's improper hygiene protocols. Consequently, the Court finds ADQ has satisfied the fourth and final element for the issuance of a TRO.

## CONCLUSION

Concluding ADQ prevails in carrying the burden of persuasion on each of the four requirements for a TRO, the Court finds ADQ's Motion should be and is hereby **GRANTED-IN-PART** and **DEFERRED-IN-PART**. ADQ's Motion for a Temporary Restraining Order is granted. The Court defers ruling on the Motion for Preliminary Injunction until after a full evidentiary hearing. Accordingly, the Court renders the following:

**IT IS THEREFORE ORDERED** UAM and all those in active participation with UAM (including officers, managers, guarantors, and employees) are enjoined from:

1. Operating its Restaurant at 200 Ross Sterling, Anahuac, Texas 77514 as a DAIRY QUEEN® and/or DQ® store;

2. Using or displaying ADQ's marks, including the DAIRY QUEEN®, DQ®, or BLIZZARD® trademarks, without authorization from ADQ;

3. Selling or distributing DAIRY QUEEN®, DQ®, or BLIZZARD® products; and

4. Associating with the DAIRY QUEEN®, DQ®, or BLIZZARD® franchise system.

ADQ's counsel must immediately serve the Complaint, moving papers and this Temporary Restraining Order upon UAM. ADQ must serve UAM, or its registered agent, or its counsel, with a copy of this Order by personal service, including by email, facsimile transmission, priority mail or Federal Express, on or before **November 1, 2024**. ADQ must file proof of such service. The Court finds this service is good and sufficient. This TRO will not become effective until Plaintiff has served UAM in accordance with this paragraph.

This Order will remain in full force and effect for fourteen (14) days from the date of service on UAM.

ADQ shall not be required to post a bond.

**IT IS SO ORDERED.**

**SIGNED this 25th day of October, 2024, at 10:59am.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**