UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**AMERICAN DAIRY QUEEN CORPO-
RATION,**

    *Plaintiff*,

**v.**
                                                      Case No. 5:24-CV-01209-JKP

**UAM, LLC,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff American Dairy Queen Corporation's ("ADQ") Motion for Partial Summary Judgment. *ECF No. 89*. Defendant UAM, LLC filed a Response, to which ADQ filed a Reply. *ECF Nos. 94, 98*. After due consideration of the parties' briefings, the summary judgment evidence, and the applicable law, the Court GRANTS ADQ's Motion for Partial Summary Judgment. *ECF No. 89.*

BACKGROUND

This case arises from a failed franchise relationship between Plaintiff American Dairy Queen Corporation ("ADQ") and Defendant UAM, LLC ("UAM"). *See ECF No. 1*. The following stipulated facts derive from the parties' Joint Federal Rule of Civil Procedure 26(f) Report. *ECF No. 52*.

ADQ is the franchisor and owner of the Dairy Queen franchise system. *Id*. ADQ authorized UAM to operate a single Dairy Queen franchise restaurant located at 200 Ross Sterling, Anahuac, Texas, 77514. *Id*. The Franchise Agreement granted UAM a license to use the registered trade name 'DAIRY QUEEN' and marks in connection with the restaurant. *Id*. Following alleged violations of its covenants, ADQ terminated the Franchise Agreement in October 2024.

*Id.*

Given the expedited consideration the Court is giving this matter, the Court will not repeat additional background and case facts here, but rather refers the parties and any reviewing court to ADQ's Complaint, UAM's Amended Answer and Counterclaims, the Preliminary Injunction and Motion Hearing Transcript, the parties' Stipulated Preliminary Injunction, the Court's Memorandum Opinion and Order awarding bond, and the parties' Joint Federal Rule of Civil Procedure 26(f) Report. *ECF Nos. 1, 38, 39, 44, 52, 88.*

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex*, 477

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(a). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

## ANALYSIS

As a threshold matter, the Court notes UAM does not separately address ADQ's causes of action or its own counterclaims. *See ECF No. 94*. To the extent the Court is able to determine whether UAM's arguments correspond to specific elements of ADQ's causes of action or its own counterclaims, the Court considers them.

**I. ADQ Is Entitled to Summary Judgment on Its Causes of Action for Breach of Contract and Declaratory Judgment (Counts 1–2)**

Under Texas law, a party asserting a breach of contract cause of action must prove: "(1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *Kellermann v. Avaya, Inc.*, 530 F. App'x 384, 388 (5th Cir. 2013); *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544–45 (5th Cir. 2003) (applying Texas law).

**A.   The Franchise Agreement Is a Valid Contract**

First, there is no dispute the Franchise Agreement is a valid, enforceable contract. *ECF No. 52 at 5* (stipulated fact: "The Franchise Agreement (ECF No. 1-2) is a valid and enforceable contract.").

**B.   ADQ Performed Under the Franchise Agreement**

Second, although UAM argues ADQ improperly terminated the Franchise Agreement based on "extracontractual grounds," there is no reasonable dispute ADQ performed under the Franchise Agreement. *ECF No. 94 at 13–14*. ADQ's October 10, 2024, Notice of Default reads:

> Dear Licensee:
>
> This letter is official Notice of Default under Section 11 of your DAIRY QUEEN® Franchise and License Agreement dated December 19, 1979, as amended and assigned (collectively, the "Agreement"). You have failed to comply with Sections 9(1) and 9(2) of your Agreement which require that you use only soft serve mix and supplies that are approved by American Dairy Queen Corporation (ADQ), that you follow all of ADQ's product preparation procedures, and that only fresh milk be used as liquid parts of malts and shakes.

*ECF No. 92-6 at 1*. While UAM claims the Notice of Default concerned only the use of rerun milk to make malts and shakes and not its use of soft serve mix to make malts and shakes, detailed *infra*, UAM ignores the fact both practices are prohibited by Section 9(2) of the Franchise Agreement. *ECF No. 92-2 at 4, ECF No. 94-1 at 4* ("Only fresh milk shall be used as liquid parts of malts and shakes."). Thus, ADQ did not terminate the Franchise Agreement on extracontractual grounds.

Because UAM does not separately address its own counterclaims, it is not clear if this argument in its Response is also dedicated to UAM's breach of contract counterclaim. *Compare ECF No. 94 at 13–14 with ECF No. 88 at 15*. To the degree it is, ADQ is entitled to summary judgment on UAM's breach of contract counterclaim on this basis as well.[2]

### C. UAM Breached the Franchise Agreement

Third, ADQ establishes UAM breached the Franchise Agreement. To begin, both parties attach the Franchise Agreement to their briefings, which states:

> 11. If the licensee herein shall make default in the payment of any royalty, or in the making of any report hereunder, or shall commit any breach of any covenant or any agreement herein contained, the licensor may, at its option, declare this

---

[2] The Court declines to readdress UAM's promissory estoppel argument. *ECF No. 94 at 16–17*. The Court addressed this argument in its March 14, 2025, Memorandum Opinion and Order. *ECF No. 83*.

5

>agreement terminated and revoke the License herein granted by notice in writing to such effect
>
>. . .
>
>and the licensee shall thereupon immediately cease all use of the freezers furnished by Licensor and use of the trade name "DAIRY QUEEN" and any and all rights that Licensee may have or may have had under this agreement shall cease, terminate and end, including the loss of all monies paid hereunder by Licensee to Licensor, either as a franchise payment or royalty payments made hereunder.
>
>. . .

*ECF No. 92-2 at 4, ECF No. 94-1 at 4*. Among others, one of the agreements the Franchise Agreement requires is:

>9.
>
>. . .
>
>   (2) That all Mix and other food supplies, including meats, buns, vegetables, fruits, drinks, cones, cups, containers, topping, flavoring, coloring and like supplies and materials, shall meet the standards and specifications approved by licensor, and such standards of quality must be maintained at all times. ***Only fresh milk shall be used as liquid parts of malts and shakes***.

*Id.* (emphasis added).

In its Motion for Summary Judgment, ADQ points the Court to the following summary judgment evidence demonstrating UAM breached the Franchise Agreement by selling shakes made using soft serve mix instead of milk: (1) ADQ's Request for Admissions; and (2) the deposition testimony of Muhammad Ashraf, designated representative of UAM, ("Mr. Ashraf"). *ECF No. 92-19; ECF No. 92-30*. In ADQ's Request for Admissions, UAM admits on October 8, 2024, and October 14, 2024, it sold shakes to customers that were made using soft serve mix in place of fresh milk. *ECF No. 92-19 at 5–6*. In Mr. Ashraf's deposition testimony he confirms business records show no 2024 milk orders from Labatt foods, ADQ's approved vendor. *ECF No. 92-30 at 40–46*.

6

Additionally, in its Reply, ADQ points the Court to the following summary judgment evidence UAM attached to its Response: (1) the Declaration of Mr. Ashraf; (2) the Declaration of Glinda Wells, the day-time manager of UAM's restaurant; and (3) the Declaration of Jaylen Richardson. *ECF No. 94-10*; *ECF No. 97-1, ECF No. 97-2*. These declarations further demonstrate "UAM sometimes deviates from the practice [of using fresh milk as the liquid parts of malts or shakes] when milk is in short supply by substituting soft serve mix . . . to make shakes until milk can be purchased." *ECF No. 94-10 at 1*.

The Court now considers the arguments in UAM's Response related to breach in turn.

### 1. UAM Materially Breached the Plain Terms of the Franchise Agreement

In its first argument, UAM concedes it breached the Franchise Agreement, but claims its "isolated and temporary ingredient substitution was a nonmaterial breach insufficient to justify termination." *ECF No. 94 at 2*. In its Reply, ADQ counters "UAM concedes that it breached the fresh-milk covenant. This breach gave ADQ the right to terminate without regard to whether the breach was material." *ECF No. 98*. Based upon the undisputed facts, the Court agrees.

Under Texas law, "an actionable breach of contract occurs only when one of the parties to a contract commits a material breach which substantially impairs the rights of the other contracting party." *Weingarten Realty Inv'rs v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 837 (S.D. Tex. 1999) (citing *Doherty v. DeVaughn*, No. 14–97–00624–CV, 1998 WL 502950, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 1998, no pet.) (not designated for publication)), *aff'd*, 234 F.3d 28 (5th Cir. 2000) (per curiam).

"What constitutes a breach of contract is a question of law, but whether the breaching conduct occurred is a question of fact." *Tex. Capital Bank N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, 846 F.3d 112, 127 (5th Cir. 2017). Generally, whether a breach is materi-

Case 5:24-cv-01209-JKP-ESC   Document 101   Filed 04/25/25   Page 8 of 16

al is a question of fact (*id.*); however, there are "some instances where materiality may be determined as a matter of law." *Id*. at 127 n.17; *see also Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Materiality may be decided as a matter of law if reasonable jurors could only reach one verdict. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017).

To determine materiality, courts consider "the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Davis v. Allstate Ins. Co.*, 945 S.W.2d 844, 846 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994)).[3] "The less the nonbreaching party is deprived of the expected benefit, the less material the breach." *Hernandez*, 875 S.W.2d at 693; *see also Simms v. Jones*, 296 F.R.D. 485, 502 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016).

Here, the marriage of the two clauses of the Franchise Agreement, inserted *supra*, leads to the unmistakable conclusion that "[i]f the licensee . . . shall commit any breach of any covenant or any agreement herein contained, the licensor may, at its option, declare this agreement terminated . . . [and] "it is agreed between the parties . . . [o]nly fresh milk shall be used as liquid parts of malts and shakes." *ECF No. 92-2 at 4, ECF No. 94-1 at 4*. Thus, by failing to use fresh milk to make malts and shakes UAM materially breached the plain terms of the Franchise Agreement.

---

[3] Texas courts also examine other factors not relevant here, including (1) "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;" (2) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture;" (3) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;" and (4) "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. LAW INST. 1981)).

8

ADQ presents summary judgment evidence demonstrating UAM breached the Franchise Agreement by selling shakes made using soft serve mix instead of milk and in UAM's Response it admits the same, stating:

> On rare occasions when the store ran out of milk, UAM's staff substituted soft-serve mix ("Mix") until more milk arrived.
>
> . . .
>
> In early October 2024, the Restaurant's manager, Ms. Glinda "Cricket" Wells, suffered a profound tragedy when her father was fatally injured . . . That loss significantly disrupted her routine and caused her to overlook standard ordering tasks, including timely restocking milk . . . As a result, the Restaurant briefly ran out of milk on or about October 8 . . . Staff responded by using Mix for a limited number of shakes, rather than turning customers away.
>
> . . .
>
> The Restaurant . . . ran out of [milk] again toward the end of October 13 . . . On October 14 . . . once more . . . staff were briefly using Mix in place of milk.
>
> . . .
>
> UAM faced unexpected operational challenges due to staff bereavement and briefly used a substitute ingredient for milk in a small number of shakes.

*ECF No. 94 at 5, 7, 9*. Because UAM does not contest selling shakes made using soft serve mix instead of milk, UAM fails to raise a genuine dispute of material fact regarding its material breach. ADQ is entitled to summary judgment on this basis.

    **2.    ADQ Did Not Waive UAM's Breach**

In its second argument, UAM claims ADQ waived any breach. *ECF No. 94 at 11–13*. UAM states, without citing to the Franchise Agreement:

> 37.    Under the express terms of the contract, waiver is allowed when: (1) the party to enforce notifies the breaching party of the breach; (2) the breach is not continuous in nature; and, (3) the party to enforce does not terminate for the noticed breach.

*ECF No. 94 at 11*. However, upon reviewing the Franchise Agreement, it does not contain this language. Instead, as UAM acknowledges—confusingly—at the bottom of the same page, the Franchise Agreement states:

> 12. The failure of either party to notify the other of any default shall not be deemed a waiver of that or any subsequent default. The failure by Licensor to exercise any right or to terminate this agreement in accordance with the provisions herein set forth authorizing such termination for breach hereof shall not be deemed a waiver of the right so to do for persistence by the licensee in a breach of continuing nature or for any subsequent breach.

*Id.; See also ECF No. 92-2 at 4, ECF No. 94-1 at 4*. Notwithstanding, UAM urges the Court disregard this language and apply "the doctrine of *expressio unius est exclusio alterius*" to interpret this Franchise Agreement term to mean "notifying the other of a default *could* be a waiver." *ECF No. 94 at 11–12*.

The Court declines UAM's invitation to apply the rule of *expressio unius est exclusio alterius*. According to the maxim (also known as the negative-implication canon), "'expressing one item of an associated group or series excludes another left unmentioned.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 290 (2017). This interpretive canon applies, however, only when circumstances support a sensible inference that the term left out must have been meant to be excluded. *Id*.

While UAM cites *Phillips Petroleum Co. v. Gillman*, a Texas Court of Civil Appeals case, for support, the Court notes the *Phillips* Court declined to construe a contract as including additional words when the contract's language is unambiguous. 593 S.W.2d 152, 154 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.). Further, the Texas courts have further held "a rule of construction in law does not overrule or supersede the intention of the parties to the contract." *St.*

*Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 207 (5th Cir. 1996).[4]

Because the contractual language in the Franchise Agreement appears to be unambiguous, it would be inappropriate to apply the interpretative canon here. ADQ is entitled to summary judgment on this basis also.

### D. ADQ's Damages Resulted From UAM's Breach

In the instant case, ADQ does not seek summary judgment for the amount of damages it is owed. *See ECF No. 89*. Instead, ADQ explicitly seeks only partial summary judgment "on the liability portion of the case to narrow the issues and expedite resolution" and claims "UAM's breaches harmed ADQ, including by causing damage to its brand, goodwill, and reputation, in an amount that will be proven during Phase II of this case." *ECF No. 89 at 5, 21*. In its Response, UAM does not address damages or argue that no damages exist. *See ECF No. 94*.

As stated above, UAM concedes it breached the Franchise Agreement. By this admission, UAM further concedes that at least some damages exist for ADQ's breach of contract cause of action, which at this juncture is all the Courts needs to rule on liability. *NBTY Mfg., LLC v. Compass Alpha LLC*, No. 3:22-CV-2923, 2024 WL 2967350 at *2 (N.D. Tex. June 11, 2024).

Accordingly, the Court holds no genuine dispute of material fact exists for ADQ's breach of contract cause of action and grants ADQ's Motion for Partial Summary Judgment on liability only for this cause of action.

### II. ADQ Is Entitled to Summary Judgment on Its Lanham Act Cause of Action for Trademark Infringement and Its Lanham Act and Common Law Causes of Action for Unfair Competition (Counts 3–5)

---

[4] *See Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 231 (Tex. App. 1992, writ denied)(refusing to apply the rule of expressio unius est exclusio alterius in the face of contrary evidence with respect to the parties' intentions); *see also Jochec v. Clayburne*, 863 S.W.2d 516, (Tex. App.1993, writ denied) (recognizing that general rules of construction "[are] necessarily arbitrary and should be used only as a 'tie-breaker' where more direct evidence does not resolve the ambiguity").

"Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement, *e.g.*, the likelihood of confusion." *Mission Pharmacal Co. v. Virtus Pharm., LLC*, 23 F. Supp. 3d 748, 759 (W.D. Tex. 2014). This is because "[a]s a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) (citing *Boston Prof'l Hockey Ass'n Inc. v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir. 1975)). Further, "[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"[5] The principal issue is likelihood of confusion. *Waples-Platter Companies v. Gen. Foods Corp.*, 439 F. Supp. 551, 583 (N.D. Tex. 1977). The Court will, therefore, treat ADQ's federal and state common law infringement causes of action as raising the same issue. *Id. at 583–584*.

Under the Lanham Act, "a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citations omitted). Infringement is established if a person uses:

> (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (quoting *Boston Prof'l Hockey Ass'n Inc.*, 510 F.2d at 1009–10); *see* 15 U.S.C. § 1114.

In its Response, UAM does not dispute the first element, that ADQ's marks are registered, owned, and legally protected by ADQ. *See ECF No. 94; see also ECF No. 52 at 6* (stipu-

---

[5] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n. 3 (Tex.App.—Austin 2001, pet. denied) (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ))).

lated fact: "the Agreement reserves exclusive ownership over the franchise and its marks in ADQ").

However, UAM disputes the remaining elements, arguing ADQ improperly delivered its Notice of Termination via email on October 16, 2025, because "[r]evocation could only be effective upon UAM's receipt of physical notice." *ECF No. 94 at 17–18*. Specifically, UAM argues:

> Section 11 of the 1979 Franchise Agreement further cements the requirement that any revocation must occur "by notice in writing." Exhibit 1. In 1979, the only reasonable interpretation of "in writing" was physical documentation—email did not yet exist as a means for official correspondence. Courts interpreting contracts look to the parties' intent at the time of formation. *Coker*, 650 S.W.2d at 393-4. Thus, an emailed notice in 2024 fails to satisfy the contractual requirement. Revocation could only be effective upon UAM's receipt of physical notice, which occurred on October 22, 2024.

*Id. at 18*. UAM claims "[b]ecause UAM immediately ceased operations on October 23, 2024—the first day after receipt—UAM did not use ADQ's marks without consent in commerce." *Id. at 18*. In its Reply, ADQ points the Court to UAM's Amended Answer and the parties' Joint Federal Rule of Civil Procedure 26(f) Report wherein UAM admits ADQ terminated the Franchise Agreement October 16, 2025. *ECF No. 52 at 6; ECF No. 98 at 3*. Additionally, ADQ argues "[a]n email is, of course, a 'writing.'" *ECF No. 98 at 5*.

The interpretation of a contract is a question of law. *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667 (5th Cir. 2023) (citing *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993)). Whether a contract provision requires strict or substantial compliance with its terms is governed by state law in diversity cases. *Id.* (citing *Rogers v. Aetna Cas. & Sur. Co.*, 601 F.2d 840, 844 (5th Cir. 1979)). But where state substantive law requires substantial compliance, "whether a party has substantially complied with the terms of a contract presents a pure question of fact that the trier of fact alone may decide." *Id.* (quoting *Turrill v. Life Ins. Co.*, 753 F.2d 1322, 1326 (5th Cir. 1985)). That is true even in diversity cases be-

13

cause "where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary." *Id*. (quoting *Nunez v. Super. Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978)).

While UAM argues "Texas courts interpret notice provisions strictly," the Texas doctrine of substantial compliance applies. In *James Constr. Grp., LLC v. Westlake Chem. Corp.*, the Texas Supreme Court recognized substantial compliance as the proper standard by which to evaluate satisfaction of contractual notice conditions and rejected the idea strict compliance with express conditions precedent is required. 650 S.W.3d 392, 406 (Tex. 2022). Substantial compliance in contracts "excuses a party's deviations from a contractual requirement, but only if those deviations do not severely impair the purpose of the requirement." *S. Tex. Elec. Coop. v. Dresser-Rand Co.*, 575 F.3d 504, 508 (5th Cir. 2009). As stated above, the question of substantial compliance is for the factfinder to decide.[6] *Elmen*, 86 F.4th at 678 (citing *Turrill*, 753 F.2d at 1326); *e.g.*, *Wavetronix LLC v. Iteris, Inc.*, No. 1:24-CV-00190, 2024 WL 3085179 (W.D. Tex. June 17, 2024), *R. & R. adopted*, No. A-24-CV-00190, 2024 WL 3433706 (W.D. Tex. July 15, 2024).

However, it is unnecessary for the factfinder to determine whether ADQ substantially complied with the terms of the Franchise Agreement when it delivered its Notice of Termination via email on October 16, 2024. Even assuming ADQ terminated the Franchise Agreement October 22, 2024, as UAM contends, ADQ presents summary judgment evidence indicating UAM did not "immediately cease[] operations on October 23, 2024" as it claims. *ECF No. 94 at 18; ECF No. 98 at 5*. UAM's sales records, in spreadsheet form, show sales of malts and shakes on

---

[6] At the January 6, 2025, Status Conference held before the Magistrate Judge, the parties indicated they may wish to pursue a bench trial. Min. Ent. Jan. 6, 2025. The Court then ordered the parties to file a joint advisory stating whether they wish to waive their right to a jury trial. *ECF No. 61*. Subsequently, the parties advised they did not reach agreement on this issue. *ECF No. 68*. As a result, the Court is not the trier of fact.

14

October 24, 2024, and October 25, 2024. *ECF No. 92-96 at 7–8*. In Mr. Ashraf's deposition testimony he confirms he created the spreadsheet and the spreadsheet reflects all of the malts and shakes UAM sold on the dates listed. *ECF No. 92-30 at 47–49*.

As such, ADQ's summary judgment evidence demonstrates UAM used ADQ's marks in commerce, in connection with the sale of goods, after UAM received written notice from ADQ. As to the second, third, and fourth, elements ADQ therefore carries its initial burden. Because UAM presents no competent summary judgment evidence showing the existence of a genuine dispute of material fact as to these elements they are uncontested.

Regarding the fifth element, likelihood of confusion, it is undisputed UAM used ADQ's exact marks, not just similar marks, and held its restaurant out as a Dairy Queen-brand restaurant after UAM received written notice from ADQ. When a defendant uses a plaintiff's exact marks, as occurred in this case, courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists. *See Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310–11 (5th Cir. 2008) (noting that marks which are similar, rather than the same, require a greater confusion analysis); *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex.2009) (concluding that likelihood of confusion is "evident" when a defendant used a plaintiff's exact marks).

ADQ presents summary judgment evidence demonstrating UAM displayed ADQ's marks on the following dates after UAM received written notice from ADQ: October 26, 2024; December 15, 2024, January 11, 2025; and January 24, 2025, which is after the Court entered the Stipulated Preliminary Injunction on November 22, 2024. *See ECF Nos. 91, 91-1, 91-2, 91-3, 91-4, 91-5, 91-6, 91-7, 91-8, 91-9, 91-10, 91-11, 91-12; See also ECF No. 38*. Therefore, ADQ has established a likelihood of consumer confusion between licensed Dairy Queen brand restaurants

15

and UAM's restaurant.

Accordingly, the Court holds no genuine dispute of material fact exists for ADQ's federal and state common law infringement causes of action and grants ADQ's Motion for Partial Summary Judgment on liability only for these causes of action.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** ADQ's Motion for Partial Summary Judgment. *ECF No. 89*.

It is so ORDERED.
SIGNED this 25th day of April, 2025.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE